IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**JOSE DAVID VALDEZ BALDENEGRO,**

        Plaintiff,

v.

**MICHAEL NAYLOR; DON CONVERSE;
JOE FERGUSON; and JACKSON
COUNTY JUVENILE SERVICES,**

        Defendants.

Civil No. 11-3038-CL

**REPORT AND RECOMMENDATION**

CLARKE, Magistrate Judge:

    Plaintiff Jose David Valdez Baldenegro has filed a first amended complaint alleging claims for violation of his civil rights arising out of his probation as a juvenile. Plaintiff seeks general, special, and punitive damages, and reasonable attorney fees and costs. This court has jurisdiction pursuant to 28 U.S.C. § 1331. All defendants move to dismiss plaintiff's amended complaint (#11) pursuant to Federal Rules of Civil Procedure 12(b)(6) on the ground that plaintiff fails to state claims for relief. Plaintiff opposes defendants' motion. For the reasons explained below, defendants' motion should be granted in part and denied in part.

Report and Recommendation - Page 1

## **LEGAL STANDARDS**

Defendants filed an answer to plaintiff's amended complaint (#9) prior to filing their motion to dismiss. Accordingly, the Court will address their motion as one for judgment on the pleadings under Federal Rules of Civil Procedure 12(c). Rule 12(c) provides "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." However, because a Rule 12(b)(6) and Rule 12(c) motions challenge the sufficiency of the pleadings, the same standards apply in evaluating the pleading. Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

The factual allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990); Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004) (at the pleading stage, "we accept as true all allegations in Elvig's complaint and treat as false those allegations in the answer that contradict Elvig's allegations"). All inferences reasonably drawn from the alleged facts must be construed in favor of the nonmoving party. Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

The factual allegations, taken as true, must be sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Report and Recommendation - Page 2

Twombly, 550 U.S. at 556); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Further, to show a right to relief, a plaintiff has the obligation to plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555.

Generally, in ruling on a motion to dismiss or for judgment on the pleadings, the court may not rely on evidence outside the pleadings. Hal Roach Studios, 896 F.2d at 1550. However, the court may consider documents which are referenced in the complaint and whose authenticity are not questioned by the parties, and matters subject to judicial notice. Id.; Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("'incorporation by reference doctrine'").

"'Courts have discretion to grant a Rule 12(c) motion with leave to amend.'" Gifford v. Bank of Am., No. CV 09-639-PK, 2010 WL 3199946, at *2 (D. Or. July 9, 2010), adopted by Order, 2010 WL 3219537 (D. Or. Aug. 10, 2010).

## FACTUAL BACKGROUND

On November 21, 2002, plaintiff Jose David Valdez Baldenegro, who was eleven years old at the time, was placed on juvenile probation for the maximum statutory period of five years.[1] Plaintiff's probationary period expired on or about November 21, 2007, the date when the five-year statutory maximum was reached.

---

[1] ORS 419C.504 provides in pertinent part that the court "may place the youth offender on probation to the court for a period not to exceed five years."

Defendant Michael Naylor, a probation officer for Jackson County Juvenile Services (JCJS) at the time, began supervising plaintiff's probation in early November 2007. Defendant Naylor knew or should have known that plaintiff's juvenile probationary period expired on November 21, 2007. However, in March 2009, defendant Naylor arrested plaintiff for allegedly violating conditions of probation which, based on defendant Naylor's recommendation, resulted in detention for eight days.

Despite being told by an Oregon Department of Human Services caseworker that defendant Naylor had arrested and detained plaintiff without cause, defendant Naylor's immediate supervisor, defendant Dan Converse, took no action.

On or about April 4, 2009, defendant Naylor contacted Immigration and Customs Enforcement (ICE) and provided it with information from plaintiff's confidential juvenile medical and therapy records. ICE took plaintiff into federal immigration custody on April 8, 2009, and transported him to its detention center in Washington State. Plaintiff was incarcerated in immigration detention for approximately two weeks until April 22, 2009, after his foster parents posted bond.

On April 23, 2009, the day after plaintiff was released from immigration custody, defendant Naylor arrested plaintiff for allegedly violating conditions of probation after defendant had conducted a warrantless search of his school locker. Plaintiff was incarcerated in the Jackson County Juvenile Detention Center from April 23, 2009, until May 1, 2009. Defendant Naylor again contacted ICE and provided it with information from plaintiff's confidential juvenile medical records. ICE again took plaintiff into custody on April 27, 2009, but, while

plaintiff was en route to the detention facility in Washington State, a temporary restraining order was granted which prevented ICE from transporting plaintiff out of Oregon.

A hearing was held on April 28, 2009, in Jackson County Juvenile Court, and the court, upon learning that plaintiff's juvenile probation had expired eighteen months earlier, entered an order on May 1, 2009, formally terminating plaintiff's juvenile probation. Plaintiff was released from Jackson County Juvenile Detention Center on May 1, 2009.

After the first time plaintiff was taken into custody by ICE, defendant Joe Ferguson, juvenile deputy director of JCJS at the time, was contacted by an Oregon Department of Human Services social services supervisor and informed that defendant Naylor had contacted ICE and was attempting to have plaintiff deported from the country, but defendant Ferguson took no action. Despite having personal knowledge that defendant Naylor was actively attempting to have plaintiff deported, defendant Ferguson, failed to investigate defendant Naylor's actions and prevent defendant Naylor from further violating plaintiff's rights.

In his first amended complaint, plaintiff alleges four claims for relief against defendants arising out of defendants' acts and omissions during the eighteen months after his juvenile probation had expired: a claim for unreasonable seizure in violation of the Fourth Amendment; a claim for unconstitutional deprivation of liberty in violation of his Fourth, Fifth, and Fourteenth Amendment rights; a claim for violation of right to privacy protected by the Fourth, Ninth, and Fourteenth Amendments; and a claim for an unlawful search in violation of the Fourth Amendment.

//

## DISCUSSION

### Claims against Defendant Naylor

Defendants contend that defendant Naylor is entitled to absolute quasi-judicial immunity as to all claims against him because he was carrying out, and acting pursuant to, a court order. They assert that, although the governing statute and the court's Order of Commitment provide that the term of juvenile probation "should" not exceed five years (Defs. Mem. at 4), plaintiff's juvenile probation was not terminated until an order was entered on May 1, 2009.[2]

State government officials sued in their individual capacities under 42 U.S.C. § 1983 may be entitled to absolute immunity or qualified immunity. It is presumed that qualified immunity rather than absolute immunity is sufficient to protect officials in exercising their duties. Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004) (citing Burns v. Reed, 500 U.S. 478, 486-87 (1991). The immunity accorded an official is determined based on the function the official performs and not the official's administrative designation. Id. at 1188-89, 1191. Absolute judicial immunity has been extended to state government officials who perform quasi-judicial functions, that is, functions which bear a close association to the judicial process. Id. at 1188, 1190; Beltran v. Santa Clara Cnty., 514 F.3d 906, 908-09 (9th Cir. 2008) (per curiam) (absolute immunity granted "'only for those functions that were critical to the judicial process itself'").

---

[2] In support of their motion on this ground, defendants rely on three exhibits attached to their motion, the "Order of Commitment to the Department of Human Services" filed in the Juvenile Department of Malheur County Circuit Court on November 21, 2002 (Ex. A), a "Defense Motion and Order to Terminate Probation" filed on April 27, 2009, in the Juvenile Department of Jackson County Circuit Court (Ex. B), and an "Order of Transfer" from Malheur County (Ex. C). Because the court is able to resolve the issue without reference to these documents, they have not been considered by the court and the court makes no ruling as to their admissibility on a motion for judgment on the pleadings.

Defendants have not sustained their burden of showing the defendant Naylor is entitled to absolute immunity. The out-of-circuit cases upon which defendants rely are clearly distinguishable. There, the actors–sheriffs, jailer, and hospital superintendent–were carrying out orders of the respective courts in confining the plaintiff. Slotnick v. Garfinkle, 632 F.2d 163, 165-66 (1st Cir. 1980) (per curiam); Fowler v. Alexander, 478 F.2d 694, 695-66 (4th Cir. 1973). In the Ninth Circuit, probation officers preparing reports for the court have been entitled to absolute immunity. Demoran v. Witt, 781 F.2d 155, 157-58 (9th Cir.1985); Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970) [probation officer who prepared and submitted a probation report and a court-appointed psychiatrist who prepared and submitted medical reports entitled to absolute quasi-judicial immunity].

Here, in contrast, defendant Naylor is alleged to have caused plaintiff's arrest on two occasions, provided confidential information to a federal agency in an effort to have plaintiff deported, and conducted a warrantless search of plaintiff's locker. An official "performing investigatory or administrative functions, or [when] essentially functioning as a police officer or detective" is not entitled to absolute immunity. Swift, 384 F.3d at 1188, 1190 & n.4 (quoting Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003)). Defendant Naylor was essentially acting as a law enforcement officer in arresting plaintiff and searching his locker. See id. at 1190 n.4, 1191-92 (and cases cited); Anderson v. Yamhill Cnty, No. CV 04-908-PA, 2005 WL 3371356, at *8 (D. Or. Dec. 9, 2005) (rejecting argument that probation officer and supervisor were simply executing valid court order when they issued warrant for arrest, stating "the [court order] on which they purport to have relied did not say, 'Arrest Anderson and imprison him for thirty days'"; not entitled to absolute immunity). Further, parole officials who disseminated information

Report and Recommendation - Page 7

about a parolee to third parties have been found to be not entitled to absolute immunity. Anderson v. Boyd, 714 F.2d 906, 910 (9th Cir. 1983), abrogation in part recognized by Swift, 384 F.3d 1190.

Under the functional analysis applied in the Ninth Circuit, this court concludes that, even if defendant Naylor was acting under a valid court order at the time of the conduct alleged, which there are serious questions about on this record, he is not entitled to absolute immunity. Defendants' motion for judgment on the pleadings on this ground should be denied.

Defendants also contend that defendant Naylor is entitled to immunity as to plaintiff's claims that he provided information to the U.S. Immigration and Customs Enforcement (ICE) on the ground that he provided that information pursuant to a duly authorized subpoena. They argue that, under the federal preemption doctrine, state law stands as an obstacle to the purposes and accomplishment of federal law.

In making this argument, defendants rely on an ICE subpoena attached as Exhibit D to their memorandum in support of their motion to dismiss. This subpoena is not referenced in plaintiff's first amended complaint and is not, therefore, incorporated by reference. Nor is it a matter properly subject to judicial notice. See Swartz, 476 F.3d at 763. Judicially noticeable facts are those "not subject to reasonable dispute" because they are "generally known" within the jurisdiction of the court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the court declines to consider the ICE subpoena.

Moreover, even if the court considered the subpoena, it would not resolve the claims alleged by plaintiff. The subpoena is dated April 9, 2009, commanding presentment of records on April 10, 2009. (Defs. Mem. Ex. D.) Plaintiff alleges that defendant Naylor provided confidential records and information to ICE on or about April 4, 2009, and again sometime between April 23 and April 27, 2009.

Defendants motion for judgment on the pleadings on this ground should be denied.

## Claims against Defendants Converse and Ferguson

Defendants contend that the claims against defendants Converse and Ferguson should be dismissed because plaintiff fails to state facts sufficient to state claims that they failed to supervise defendant Naylor.

A supervisor may be held liable in his individual capacity if he is directly and personally involved in inflicting the constitutional injury, or his participation involves the setting in motion of acts which cause others to inflict constitutional injury. Larez v. City of Los Angeles, 946 F.2d 630, 645-46 (9th Cir. 1991); Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001).

> Supervisory liability is imposed against a supervisory official in his individual capacity for his "own culpable action or inaction in the training, supervision, or control of his subordinates"; for his "'acquiesce[nce] in the constitutional deprivations of which [the] complaint is made'"; or for conduct that showed "'a reckless or callous indifference to the rights of others.'"

Larez, 946 F.2d at 646 (citations omitted); Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011), reh'g en banc denied, ___ F.3d ___, NO. 09-55233, 2011 WL 4582500 (9th Cir. Oct. 5, 2011).

Plaintiff specifically alleges that defendant Naylor's immediate supervisor, defendant Converse, was informed by a Department of Human Services caseworker following plaintiff's

Report and Recommendation - Page 9

March 2009 arrest that defendant Naylor had arrested and detained plaintiff without cause, but took no action. These factual allegations support a claim that defendant Converse, as defendant Naylor's immediate supervisor, took no action in supervising or controlling defendant Naylor and/or that he acquiesced in the constitutional violations alleged. The court finds that plaintiff alleges sufficient facts to give defendant Converse fair notice of the claim against him and that these factual allegations plausibly suggests entitlement to relief on plaintiff's claims that he was arrested in violation of his constitutional rights. See Starr, 652 F.3d at 1216.

Plaintiff specifically alleges that the deputy director of JCJS, defendant Ferguson, had personal knowledge that defendant Naylor was actively attempting to have plaintiff deported, but he failed to investigate defendant Naylor's actions. Plaintiff alleges that, after he was taken into custody by ICE on April 8, 2009, defendant Ferguson was contacted by a Department of Human Services social services supervisor who informed him that defendant Naylor had contacted ICE and was attempting to have plaintiff deported, but defendant Ferguson took no action. These factual allegations support a claim that defendant Ferguson, as the deputy director of juvenile services, took no action in supervising or controlling defendant Naylor and/or that he acquiesced in the constitutional violations alleged. The court finds that plaintiff alleges sufficient facts to give defendant Ferguson fair notice of the claim against him and that these factual allegations plausibly suggests entitlement to relief on plaintiff's claims that he was incarcerated with the intent of being removed from the country in violation of his constitutional rights. See Starr, 652 F.3d at 1216.

However, plaintiff does not allege any facts to show any causal connection between defendant Ferguson and plaintiff's claims related to his arrest by defendant Naylor on two

Report and Recommendation - Page 10

occasions apart from his claims relating to ICE custody, or defendant Converse and defendant Ferguson as to his claims related to the provision of confidential information to ICE or the unlawful search of his school locker.

Defendants' motion for judgment on the pleadings as to plaintiff's claims against defendant Converse relating to plaintiff's March 2009 arrest and the claims against defendant Ferguson relating to his custody and attempts to have plaintiff deported should be denied, and their motion as to plaintiff's remaining claims should be granted.

### Claims against Defendant Jackson County Juvenile Services

Defendants contend that the claims against defendant JCJS should be dismissed because plaintiff fails to allege sufficient facts that it has an official policy, practice, or custom that caused a violation of plaintiff's rights.

Municipal liability results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" and its policy or custom is the "moving force" behind the particular constitutional violation. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692-694 (1978); Mateyko v. Felix, 924 F.2d 824, 826 (9th Cir. 1991). The municipality may be liable if it has a policy of inaction and that inaction amounts to a failure to protect the constitutional rights of its citizens. Oviatt *ex rel.* Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (affirming jury finding that county, through its sheriff, was liable for failing to implement internal procedures for tracking detainee arraignments); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (claims against county of negligent training, supervision, and monitoring). Further, the inadequacy of

Report and Recommendation - Page 11

training may be a basis for county liability where the failure to train amounts to deliberate indifference to the rights of citizens. City of Canton v. Harris, 489 U.S. 378, 390 (1989).

The Ninth Circuit has held that,

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy: (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

Oviatt, 954 F.2d at 1474 (quoting Harris, 489 U.S. at 390).

In each of plaintiff's four claims, he includes the following allegation:

> Defendant Jackson County Juvenile Services' policy, practice and custom of failing to have a system to identify when a child's probationary period is completed and a system to train and supervise its probation officers constituted deliberate indifference to the constitutional violations suffered by Plaintiff and which inevitably flowed from such a policy, practice and custom.

(First Am. Compl. ¶¶ 36, 43, 49, 55.)

The Ninth Circuit has held that a plaintiff may allege "nothing more than a bare allegation" of an official policy, custom, or practice. Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007); Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988). However, following Twombly and Iqbal, supra, plaintiff must plead sufficient facts which states a plausible claim and is more than a recitation of the elements of a claim. See Funez *ex rel.* Funez v. Guzman, 687 F. Supp.2d 1214, 1225 (D. Or. 2009) (Twombly "sets a more stringent pleading standard than was the rule at the time [Karim-Panahi] was decided.").

Here, plaintiff's allegations as to defendant JCJS are conclusory and recite only the bare elements of a claim of municipal liability. Plaintiff pleads no *facts* which support his claims

Report and Recommendation - Page 12

against defendant JCJS. As plaintiff points out, "A 'policy' is a '"deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing the final policy with respect to the subject matter in question."'" Fairley v. Luman, 281 F.3d 913, 917-18) (9th Cir. 2002) (per curiam) (quoting Oviatt, 954 F.2d at 1477-79; Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). Plaintiff pleads no facts of any choice by any policymaker of defendant JCJS, nor facts in support of the other elements to state a claim against defendant JCJS.

Defendants' motion for judgment on the pleadings as to plaintiff's claims against defendant JCJS should be granted.

## RECOMMENDATION

Based on the foregoing, it is recommended that defendants' motion to dismiss treated as a motion for judgment on the pleadings (#11) be granted in part and denied in part as stated, and that, if allowed by the Order, plaintiff be given twenty (20) days from the date of this court's Order to amend his claims against defendants Converse, Ferguson, and Jackson County Juvenile Services.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by November 28, 2011. If objections are filed, any*

Report and Recommendation - Page 13

*response to the objections are due by December 15, 2011, see* Federal Rules of Civil Procedure *72 and 6.*

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _9_ day of November, 2011.

_____
MARK D. CLARKE
UNITED STATES MAGISTRATE JUDGE

Report and Recommendation - Page 14